DUCKER, JUDGE:
The Sanitary Board of the City of Wheeling seeks reimbursement in the amount of $8,544.52 expended by claimant in the restoration of the easterly river bank of the back channel of the Ohio River in Wheeling and the replacement of a part of the interceptor sewer of the City of Wheeling near and adjacent to the said river bank. Claimant alleges the river bank had eroded and the sewer had been broken by erosion of the land under the sewer resulting from eddies in the flow of the river water around the bridge piers constructed by the respondent for the Interstate 70 bridge crossing the Ohio River at that place. The amount of damage was stipulated to be the amount claimed.
The interceptor sewer was constructed in 1958 and the bridge on Interstate 70 in 1965, and the failure of the sewer was discovered and repaired in 1973. A resident of Wheeling Island reported that there was a leak from the sewer, which was both a sanitary and a storm sewer, polluting the river and creating a nuisance, whereupon an investigation was made and it was discovered that the sewer had actually failed and that there had been a washout and all the waste water from the north end of Wheeling Island was discharging into the back channel of the Ohio River.
The testimony is that a two foot rise in the pool stage of the river impedes the flow of the water around the bridge piers and causes it to go around the pier, backs up its flow on the other side and creates eddy currents which erode the bank and remove the ground support *193 of the sewer, causing the sewer to break. The slope of the bank at the point of the sewer breakage was 40 feet high with an approximately two to one foot slope, and the soil was of a sandy, silty texture. The reparation of the sewer and the eroded area involved thirty-eight feet of the sewer line. When the river was at a 620 foot above sea level elevation, the water would be on the foot of the bridge pier, and for 132 days a year when it was at that stage and elevation the eddy currents occurred. There was a distance of 30 feet between the bridge piers, and the sewer breakage was about 40 feet south of the southerly pier. There was no other noticeable erosion of the river bank in the area of the piers and the sewer, except where the sewer failed, but there was installed south of the pier a headwall structure with a top elevation of 625 feet, which did create some erosion.
The respondent’s evidence is to the effect that there was a two foot depth of water “working on the toe of the slope” of the river bank at the place of the sewer failure and that such flow of water could have caused the bank to slide. This assertion is alleged to be negated by the fact that the uppermost pier is struck by water at five feet and the lower pier by two feet. Claimant says the drop of three feet between the piers was due to the scouring and washing over the stone that had been placed on the bank between the piers causing the ground to be three feet lower in that area. No leak in the sewer had been discovered before its complete failure.
The respondent’s testimony was to the effect that while there are always eddy currents wherever you have a flow against immovable objects, there were no large or major eddy currents at the piers and there was nothing unusual caused by the stems of the piers. Water from Wheeling Creek came in partly above the 1-70 bridge and caused some turbulence in the water, mixing under the bridge and down below. The sewer line runs about seven feet east of the easterly line of the piers and at an elevation of 630 feet above sea level or about twelve feet above normal pool stage of the river. The principal witness for the respondent testified that in his opinion the following things possibly could have caused the failure of the sewer, namely: an increased flow of Wheeling Creek caused by Interstate construction increasing the runoff and an undermining of the bank and a consequent slip; a leak in the sewer which would soften the material and increase the weight of the sewer, which being both sanitary and *194 storm, could have caused the failure with a slide; and that there had been erected in 1967 after the piers were constructed a major sign structure, a hundred feet high, 30 feet above the water, up the bank from the sewer, with major concrete footers. The wind load of the sign would cause vibration which would be transmitted to the ground, and affect the area of the sewer failure.
George Alan Hall, an expert soils engineer, testified that the eddy currents were evidently created by the entrance flow of Wheeling Creek from Ohio just north of the 1-70 west bound bridge. He said it is virtually impossible to reconstruct exactly what happened, but that based on the evidence which he had examined, he would say that it’s quite possible, in his opinion, that erosion not of the river bank but of the river bottom and the extension of scouring downstream undercut the river bank and permitted a landslide. He further testified that from the contours of the map of the river there was a concavity in the contours of the bank, which implies that surface water has been running off toward the river bank at the part involved, and that as such surface water runs over the granule soil, it seeps into the ground and toward the river bank creating forces which tend to force the soil downward and outward, and that, probably with other factors, resulted, he believes, in a landslide causing the sewer to break. He further stated that he thought there was a good possibility that the failure of the sewer would have occurred even if the bridge had never been built.
Neither the claimant nor respondent has proved by factual evidence the cause of the sewer failure; they have had to rely almost entirely on circumstantial and opinion evidence. This, of course, leaves much to conjecture, which is not usually a basis for judgment. To allow a recovery for the claimant against the respondent, negligence on the part of the latter should be proved by a preponderance of the evidence. We cannot conclude that either the construction of the bridge piers was so done in the river as to cause the flow of the water to form eddies which would undermine the land under the sewer and destroy the sewer, or that the slide of the bank and the undermining of the ground under the sewer line was caused by other water pressures than the bridge construction. From the evidence we cannot with any reasonable degree of certainty determine what the real cause of the sewer failure was. Accordingly, inasmuch as we are of the opin *195 ion that the claimant has not shown by a preponderance of the evidence that the damages suffered were the result of actionable negligence on the part of the respondent, we can make no award herein to the claimant.
Judge Garden did not participate in the consideration or decision of this claim.
Claim disallowed.